**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TURTLE ISLAND RESTORATION
NETWORK, a non-profit corporation,
*Plaintiffs-Appellants,*

v.

UNITED STATES DEPARTMENT OF
STATE,

*Defendant-Appellee.*

No. 10-17059

D.C. No.
4:09-cv-05239-CW

OPINION

Appeal from the United States District Court
for the Northern District of California
Claudia A. Wilken, District Judge, Presiding

Argued and Submitted
November 17, 2011—Stanford, California

Filed February 17, 2012

Before: Alex Kozinski, Chief Judge, Jerome Farris,
Circuit Judge, and Robert W. Gettleman, District Judge.*

Opinion by Chief Judge Kozinski

---

*The Honorable Robert W. Gettleman, Senior United States District
Judge for the Northern District of Illinois, sitting by designation.

## COUNSEL

Holley Horrell, Law Student (argued pursuant to Rule 46-4), Deborah A. Sivas (supervising attorney), Alicia E. Thesing, Robb W. Kapla, Justin Goodwin, Environmental Law Clinic, Mills Legal Clinic of Stanford Law School, Stanford, California, for the appellant.

David C. Shilton (argued), Igancia S. Moreno, Assistant Attorney General, Mark R. Haag, David B. Glazer, Kevin W. McArdle, Environmental & Natural Resources Division, U.S. Department of Justice, Washington, D.C., for the appellee.

## OPINION

KOZINSKI, Chief Judge:

Turtle Island Restoration Network ("TIRN"), a non-profit environmental organization, appeals from the district court's dismissal of its claim on res judicata grounds. TIRN alleges that the United States Department of State failed to satisfy its consultation and environmental assessment obligations under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, and the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, in conducting annual certifications of countries exempted from the general ban on shrimp imports. Section 609(b) of Public Law 101-162 prohibits the importation of shrimp harvested with technology that may adversely affect sea turtles, except from countries certified to employ a turtle protection program comparable to that of the United States. Pub. L. 101-162, § 609(b), 103 Stat. 988, 1038 (1989). We must decide whether TIRN's current lawsuit for NEPA and ESA violations is precluded by its earlier lawsuits challenging the State Department's regulations implementing the section 609(b)(2) certification process.

## I.  Background

### A.  Section 609

One of the primary threats to sea turtles is the use of trawl nets by commercial shrimp harvesting vessels. The nets frequently entrap sea turtles, causing them to drown. To address this problem domestically, the National Marine Fisheries Ser-

vice ("NMFS") requires domestic shrimp trawlers to use a Turtle Excluder Device ("TED"), a grate that keeps sea turtles and other large animals out of the nets while letting the shrimp pass through. *See* 50 C.F.R. § 223.206-207. Recognizing that this domestic effort alone is inadequate to help the plight of the migrating sea turtles, Congress enacted section 609 to encourage the international conservation of sea turtles. Pursuant to section 609(b), importation of commercially harvested shrimp or shrimp products is prohibited unless the president certifies annually that:

> (A) the government of the harvesting nation has provided documentary evidence of the adoption of a regulatory program governing the incidental taking of such sea turtles in the course of such harvesting that is comparable to that of the United States; and

> (B) the average rate of that incidental taking by the vessels of the harvesting nation is comparable to the average rate of incidental taking of sea turtles by United States vessels in the course of such harvesting; or

> (C) the particular fishing environment of the harvesting nation does not pose a threat of the incidental taking of such sea turtles in the course of such harvesting.

§ 609(b)(2), 103 Stat. at 1038. The President has delegated his certification authority to the State Department. 56 Fed. Reg. 357 (Jan. 4, 1991).

In 1991, the State Department promulgated guidelines implementing section 609(b)(2). *See* 56 Fed. Reg. 1051 (Jan. 10, 1991) ("1991 Guidelines"). The guidelines were revised in 1993, 1996, 1998 and 1999. *See* 58 Fed. Reg. 9015 (Feb. 18, 1993) ("1993 Guidelines"); 61 Fed. Reg. 17,342 (Apr. 19, 1996) ("1996 Guidelines"); 63 Fed. Reg. 46,094 (Aug. 28,

1998) ("1998 Guidelines"); 64 Fed. Reg. 36,946 (July 8, 1999) ("1999 Guidelines"). The Guidelines operationalize section 609(b)(2) by establishing a general framework and explaining the types of evidence the State Department will consider in making its decisions.

## B.   Prior Earth Island Litigation

In the early 1990s, Earth Island Institute, of which TIRN was formerly a part, sued the State Department, alleging that the implementing guidelines conflicted with section 609(b)(2) because they impermissibly restricted the geographical scope of the ban and failed to evaluate actual sea turtle take levels in certified countries. *See Earth Island Inst.* v. *Christopher*, 913 F. Supp. 559, 562 (Ct. Int'l Trade 1995) ("*Earth Island II*"). The Court of International Trade ("CIT") found that the State Department inappropriately restricted the areas to which the ban applied, but concluded that the 1993 Guidelines didn't contravene section 609(b)(2). *Id.* at 579-80.

When the State Department amended the guidelines to permit importation of shrimp from uncertified countries on a shipment-by-shipment basis, Earth Island and TIRN sued again, claiming that this new provision violated section 609(b)(2). *See Earth Island Inst.* v. *Daley*, 48 F. Supp. 2d 1064 (Ct. Int'l Trade 1999); *Turtle Island Restoration Network* v. *Mallett*, 110 F. Supp. 2d 1005 (Ct. Int'l Trade 2000). The CIT sided with TIRN but the Federal Circuit reversed, concluding that the 1999 Guidelines were a permissible interpretation of the statute. *Turtle Island Restoration Network* v. *Evans*, 284 F.3d 1282, 1286-87 (Fed. Cir. 2002) ("*Earth Island III*").

In our case, TIRN alleges that the State Department violates its obligations under NEPA and ESA when conducting section 609(b)(2) certifications. TIRN claims that the State Department violated NEPA by failing to prepare an environmental assessment or environmental impact statement evalu-

ating the impact of the country certifications, and failed to provide for public notice and comment. TIRN claims that the State Department violated ESA by failing to consult with other agencies to confirm that the certifications would not jeopardize threatened and endangered species or their habitats.

The government moved for judgment on the pleadings, asserting that TIRN is barred by res judicata in light of its earlier litigation. The district court granted the motion and dismissed TIRN's claims. The court held that TIRN's challenges to the State Department's NEPA and ESA compliance in conjunction with the country certification process "arise from the same transactional nucleus of facts as the previous *Earth Island* litigation" and are therefore barred by res judicata. TIRN timely appeals.

## II.   Analysis

**[1]** Res judicata, also known as claim preclusion, applies only where there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe Sierra Pres. Council, Inc.* v. *Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (citation and internal quotation marks omitted). The only disputed issue in this case is whether there is an "identity of claims." We consider four factors in determining an "identity of claims":

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Constantini* v. *Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982) (citation omitted). "The last of these criteria is the most important." *Id.* at 1202 (citation omitted).

It's clear that TIRN's current suit presents a different legal claim. In its prior litigation, TIRN claimed that the 1993 and 1999 Guidelines conflicted with the underlying statute, section 609(b)(2). TIRN now challenges the State Department's failure to comply with its external obligations under NEPA and ESA when conducting section 609(b)(2) certifications. Because these claims involve technically different legal challenges, we focus on the last factor of our test—whether the separate legal claims arise from the "same transactional nucleus of facts."

**A.**

**[2]** "Whether two suits arise out of the same transactional nucleus depends upon whether they are related to the same set of facts and whether they could conveniently be tried together." *Proshipline Inc.* v. *Aspen Infrastructures Ltd*, 609 F.3d 960, 968 (9th Cir. 2010) (emphasis, citation and internal quotation marks omitted). In most cases, "the inquiry into the 'same transactional nucleus of facts' is essentially the same as whether the claim could have been brought in the first action." *United States* v. *Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011). A plaintiff need not bring every possible claim. But where claims arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding.

**[3]** TIRN could have conveniently brought claims for NEPA and ESA violations when it filed its complaint in *Earth Island III* in 1998. The State Department began publishing its annual certifications as early as 1993. *See*, *e.g.*, 58 Fed. Reg. 28,428 (May 13, 1993). And, as TIRN points out, the State Department has never complied with the consultation or environmental assessment requirements of NEPA and ESA in conducting section 609(b)(2) certifications. TIRN would therefore have known that the State Department failed to comply with NEPA and ESA in each of the five years preced-

ing *Earth Island III*. In fact, TIRN concedes that it could have brought its NEPA and ESA claims during its earlier lawsuit, but that it "elected" to work with the State Department on the problem instead. Choosing to resolve a problem through alternative means isn't a defense to claim preclusion. TIRN's excuse demonstrates that it was aware of the NEPA and ESA issue back in 1998, but decided not to include it in its lawsuit.

[4] TIRN argues that res judicata can't apply because part of its challenge involves the 2009 certification decisions, which TIRN couldn't have known about or challenged in *Earth Island II* or *Earth Island III*. But TIRN mentions the 2009 certifications only as an "example" of the State Department's long-standing practice of non-compliance with NEPA and ESA. Nothing in TIRN's NEPA and ESA claims are particular to a specific country or year. Rather, TIRN alleges that the State Department has never followed NEPA and ESA when conducting country certifications. The 2009 certifications are new only in the sense that they are made annually and involve different countries. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1464 (9th Cir. 1993) (claim preclusion isn't defeated where "[d]istinct conduct is alleged only in the limited sense that every day is a new day, so doing the same thing today as yesterday is distinct from what was done yesterday"). Following TIRN's logic, there would be nothing stopping it from bringing a new general challenge to the certification process based on next year's certification decisions, and every year from now on. That's exactly the kind of piecemeal litigation res judicata aims to prevent.

**B.**

[5] Not only *could* TIRN have brought its NEPA and ESA claims during *Earth Island III*, but, because the claims arise from the same transactional nucleus of facts, TIRN *had* to bring its claims then. The claims in *Earth Island III* and here relate to the same set of facts—the State Department's pro-

cess for certifying that countries use turtle-safe measures in commercial shrimp harvesting. Technically, the earlier litigation was about the promulgation of the Guidelines, not the certification process in practice. But the Guidelines don't operate in a vacuum; they establish how the certification process works. TIRN was concerned that the Guidelines didn't comply with section 609(b)(2) only because they affect how certifications are conducted, which may adversely affect sea turtles. The same is true in our case. TIRN cares about NEPA and ESA compliance in the certification process only to help ensure that sea turtles aren't harmed. If TIRN were concerned only about the procedural harm from the government's failure to consult and conduct environmental assessments, it would lack standing. *See Summers* v. *Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."). TIRN does have standing because of its interest in the preservation of sea turtles and their habitat: The government's failure to abide by NEPA and ESA obligations may adversely impact sea turtles. It's turtles all the way down.

The existence of the same harm isn't enough to establish claim preclusion if the harm arises from different facts. We've held that even where there's the same harm, if the governmental conduct at issue is different, there's no claim preclusion. *See Cent. Delta Water Agency* v. *United States*, 306 F.3d 938, 953 (9th Cir. 2002)*; Fund for Animals* v. *Lujan*, 962 F.2d 1391, 1399 (9th Cir. 1992). But that doesn't mean harm is irrelevant. The existence of the same underlying problem sheds light on whether the claims arise from the same facts and whether they could be conveniently tried together.

Citing *Lujan*, TIRN argues that its NEPA and ESA claims can't be precluded because they involve different governmental conduct than was at issue in the prior litigation. In *Lujan*, we held that res judicata didn't apply where the earlier litigation involved "different governmental conduct," even though

the harm was the same in both cases: bison leaving Yellowstone Park. But in *Lujan*, the claim raised in the second lawsuit could not have been raised in the first lawsuit because the governmental action that was the subject of the second suit had not yet occurred. The *Lujan* plaintiffs first sued in 1985, alleging that the government's failure to prevent bison from leaving Yellowstone required an Environmental Impact Statement ("EIS"). Plaintiffs' second suit challenged the government's adoption of a bison management plan in 1990 also without conducting an EIS. The 1990 bison management plan was not only different conduct—action instead of inaction—it was also *new* conduct. *Lujan* has nothing useful to say in a case such as ours, where plaintiffs could easily have brought all the claims during the course of the earlier lawsuit.

**[6]** Here, we've established that TIRN could have brought its claims in the earlier litigation. Furthermore, the State Department actions at issue are not nearly as distinct as the conduct in *Lujan*. Essentially, TIRN separates the actions as promulgating the 1993 and 1999 Guidelines on one hand and making the certification decisions on the other. While these two actions may be procedurally different, both arise from the government's regulation of shrimp imports to encourage foreign turtle-safe shrimp harvesting. Adopting rules for certifying that countries meet the U.S. standards and actually making the certification decisions aren't sufficiently different to defeat res judicata.

## III.   Conclusion

**[7]** Because TIRN's current challenge to the State Department's section 609(b)(2) certification process arises from the same transactional nucleus of facts as its earlier litigation, res judicata bars its claims. Accordingly, we affirm the district court.

Although TIRN forfeited its opportunity to challenge the State Department's non-compliance with NEPA and ESA

obligations in section 609(b)(2) certifications, our decision doesn't preclude judicial review of this issue. Because the legal question of whether NEPA and ESA apply to section 609(b)(2) has yet to be litigated on the merits, another plaintiff—not in privity with TIRN—is still free to bring this challenge.

**AFFIRMED.**