NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 18 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

COTTONWOOD ENVIRONMENTAL
LAW CENTER,

Plaintiff-Appellant,

v.

CH SP ACQUISITION, LLC, doing business
as Spanish Peaks Mountain Club; LC LAND
COMPANY,

Defendants-Appellees.

No.    23-4381

D.C. No. 2:23-cv-00028-BMM

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Montana
Brian M. Morris, District Judge, Presiding

Argued and Submitted October 22, 2024
Portland, Oregon

Before: HAMILTON, VANDYKE, and H.A. THOMAS, Circuit Judges.[**]

Plaintiff Cottonwood Environmental Law Center ("Cottonwood") appeals the

district court's order granting summary judgment in favor of Defendants CH SP

---

[*]    This disposition is not appropriate for publication and is not precedent except
as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable David F. Hamilton, United States Circuit Judge for the Court
of Appeals, 7th Circuit, sitting by designation.

Acquisition, LLC and LC Land Company (collectively, "Spanish Peaks"). We review de novo a district court's decision granting summary judgment. *Bank of N.Y. Mellon v. Enchantment at Sunset Bay Condo. Ass'n*, 2 F.4th 1229, 1231 (9th Cir. 2021). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

In 2021, Cottonwood first initiated a lawsuit ("*Cottonwood I*") in which it alleged that Spanish Peaks violated the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, by illegally discharging reclaimed wastewater into tributaries of the Gallatin River without a permit. The parties resolved *Cottonwood I* with a consent order to "effectuate[] a full and complete settlement and release." Nearly two weeks before the district court entered the consent order, Cottonwood sent a notice letter accusing Spanish Peaks of new CWA violations using another irrigation device—snow guns—on another part of Spanish Peaks' property. Cottonwood filed its second CWA lawsuit against Spanish Peaks ("*Cottonwood II*") in 2023 based on that notice.

Because of the consent order, Spanish Peaks moved for summary judgment in *Cottonwood II*, arguing that Cottonwood was attempting to relitigate settled claims. The district court agreed, granting summary judgment to Spanish Peaks.

1. The district court properly granted summary judgment to Spanish Peaks. Under the modified claim preclusion test, the *Cottonwood I* consent order bars the claims in *Cottonwood II*. The modified claim preclusion test combines two distinct legal principles: res judicata and release. *Wojciechowski v. Kohlberg Ventures, LLC*,

2

923 F.3d 685, 689–90 (9th Cir. 2019). When applying this test, courts "look to the intent of the settling parties to determine the preclusive effect." *Id.* at 689. "The best evidence of [the parties'] intent is … the settlement agreement itself …, as interpreted according to traditional principles of contract law." *Id.* at 690 (citation omitted).

The *Cottonwood I* consent order is broad in scope, indicating the parties' intent to release claims related to the overall use of reclaimed water on Spanish Peaks' property. The only limits to the breadth of the consent order are the factual allegations contained in *Cottonwood I*'s operative complaint and the notice letter giving rise to that suit. The operative complaint identified as point sources the "holding pond and associated equipment," as well as the "golf course and related equipment, including but not limited to sprinklers and drains." And the notice letter pointed to the "holding ponds and associated infrastructure" as "contributing to the issue." Neither document limited the allegations to particular irrigation devices drawing from the holding pond. Rather, the combined language includes any infrastructure associated with reclaimed wastewater from the effluent holding pond. Spanish Peaks' use of a different device to discharge the same treated wastewater elsewhere on its property falls within the consent order's broad scope given the breadth of activities alleged in *Cottonwood I*.

The consent order also covers "known and unknown" claims that "could have been" asserted in *Cottonwood I* with the exercise of reasonable diligence.

Cottonwood sent its second notice letter about the snow guns prior to the entry of the *Cottonwood I* consent order. Cottonwood thus knew about this aspect of Spanish Peaks' irrigation program before the consent order was issued. And even if had not, the inclusion of "unknown" claims and those that "could have been" brought underscores the parties' intent to preclude this type of claim. Honoring the parties' negotiated terms here compels the conclusion that the district court did not err in concluding that Cottonwood's claims in this case are barred by the broad consent order in *Cottonwood I*.

2. The related doctrines of res judicata and release support the district court's summary judgment decision. Res judicata applies to claims that "were raised or could have been raised in a prior action," *Save Bull Trout v. Williams*, 51 F.4th 1101, 1107 (9th Cir. 2022) (citation omitted), "where there is '(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties.'" *Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 917 (9th Cir. 2012) (citation omitted). Cottonwood only challenges the "identity of claims" element, which is satisfied when a claim "arise[s] from 'the same transactional nucleus of facts.'" *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) (citation omitted). The snow gun activities challenged in this case were part of the same overall irrigation practices broadly challenged in the prior lawsuit. *Cottonwood I* involved broad allegations that Spanish Peaks violated the

4

CWA by irrigating its property with reclaimed water using various unspecified point sources connected to the same holding pond accessed by the snow guns.

As for release, parties "may release whatever claims they choose in settling traditional non-class litigation, whether or not related to the claims asserted in the pleadings." *Epstein v. MCA, Inc.*, 50 F.3d 644, 666 (9th Cir. 1995), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367 (1996). This circuit enforces releases broader than the claims brought so long as the negotiated agreement "is unambiguous in conveying the intent of the parties to release all unknown claims." *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1040 (9th Cir. 2011); *see also California v. Randtron*, 284 F.3d 969, 976 (9th Cir. 2002). The consent order expressly encompassed all "known and unknown" CWA claims. And as explained above, Cottonwood's decision to send a second notice letter about snow guns prior to the entry of the consent order indicates it knew about this particular irrigation practice. Even if it had not, by expressly releasing "unknown" claims, Cottonwood relinquished the right to bring later lawsuits arising from the same irrigation program.

The district court's summary judgment decision is therefore **AFFIRMED.**